## Pyott's Estate.   Appeal of Howard, Exr.   Leedom's Appeal.

*Will— Conversion—Debts of decedent.*

Where a testator authorizes land devised to his wife for life to be sold by a trustee appointed by the orphans' court, if the wife deems it to her advantage that such sale should be made, and such sale is made, the proceeds of the sale are not personal property applicable to the payment of testator's debts in preference to real estate devised in the residuary clause to the wife in fee.

*Specific devise—Debts of decedent—Laches—Estoppel.*

The creditor of a decedent cannot sit quietly by for years, and allow the proceeds of the sale of residuary real estate to be used for other purposes than the payment of his debts, and then be permitted to come in on the funds arising from the sale of real estate specifically devised.

Argued Feb. 15, 1894.   Appeals, Nos. 222 and 233, Jan. T., 1894, by Henry C. Howard, executor of Eliza F. Pyott, and J. Jones Leedom, creditor of Reese Pyott, deceased, from decree of O. C. Delaware Co., distributing estate of Reese Pyott, deceased.   Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and FELL, JJ.   Affirmed.

Exceptions to adjudication of executor's account.

The auditor, George E. Darlington, Esq., reported as follows :

" The amount for distribution, $9,602.30, is the proceeds of sale of real estate of deceased, sold by H. C. Howard, trustee, pursuant to the directions of the will of Reese Pyott, with the consent of the widow, and under the decree of the said orphans' court.

" The account of said trustee, showing said balance, was filed May 13, 1884, and was duly confirmed July 14, 1884.   Eliza F. Pyott, the widow of the testator, was entitled to receive the income from said sum during her lifetime.   Eliza F. Pyott died May 7, 1892, testate.

" The real estate of James Pyott was sold by the trustee on Jan. 29, 1883, and confirmed Feb. 12, 1883.

" Reese Pyott died March 16, 1876, without leaving issue ; but left a widow, the said Eliza F. Pyott, now dead, as before stated.

" Reese Pyott made his last will and testament, bearing date Feb. 6, 1873, duly proven in Delaware county, on April 28, 1876, wherein and whereby he bequeathed and devised as fol lows, after first directing all his just debts and funeral expenses to be paid out of his personal estate :

" ' Item. All the rest, residue and remainder of my personal estate, I give and bequeath to my wife, Eliza Pyott, absolutely.

" ' Item. I give, devise and bequeath to my said wife Eliza, all that certain messuage and tract of land, upon which I now live in the said township of Marple, bounded by lands of James Lewis, Sarah Fawkes, Eber Lewis and others, containing sixty acres of land, more or less, to have and to hold the same to her, for and during the term of her natural life, and in case she shall at any time deem it to her advantage that the same, or any part thereof shall be sold, and the proceeds invested for her benefit, I hereby authorize the sale of the same, by a trustee, to be appointed by the orphans' court of said county of Dela-ware, upon her petition, either in whole or in part as she may request ; said sale to be upon such terms and with such secu-rity for the proper appropriation of the proceeds, as may be fixed by said court, and the proceeds of such sale, I direct shall be legally invested by said trustee after deducting all costs and charges, and the income thereof regularly paid, half yearly to my said wife Eliza for and during her life. Upon the death of my said wife, I give, devise and bequeath the said tract of land with the appurtenances, or the proceeds thereof in case the same or any part thereof shall have been sold, to my heirs-at-law living at that time, their heirs and assigns forever, in such proportions and for such estates as they would have been entitled to the same in case of my having died intestate.

" ' Item. All the rest and residue of my estate, real, personal or mixed, of which I may die possessed, I give, devise and be-queath to my said wife, Eliza, her heirs and assigns forever.

" ' Lastly. I name and appoint my said wife, Eliza Pyott and Henry C. Howard, attorney-at-law, executors of this my last will.'

" Letters testamentary were duly granted.

After stating the next of kin and heirs at law of testator, being a sister and the children of deceased brothers and sister, James Pyott being one of them, the auditor continued :

" A claim is made by J. Jones Leedom, through his attorney, Edward H. Hall, Esq., for an award from the fund of $1,500, with interest from April 1, 1878. This claim is made on a bond of James Pyott and Reese Pyott to J. Jones Leedom for $1,500, dated March 30, 1872, and with the allegation that interest was paid to April 1, 1878, and that no part of principal has been paid, and claim for the full amount is made against the estate of Reese Pyott. The bond is payable in one year from the date thereof. . . .

" This bond held by J. Jones Leedom does not appear to have had judgment entered on it, and no previous claim appears to have been made on it against the estate of Reese Pyott, and his executors were not called on to raise funds from the sale of real estate to pay debts in the more than sixteen years that have elapsed since Reese Pyott's death to the first meeting before the auditor.

" By the will of Reese Pyott it will be seen that he directed his just debts and funeral expenses to be paid by his executors out of his personal estate, and he then gives the remainder of personal estate to his wife Eliza Pyott absolutely. The testator does not provide for the payment of his debts from any other source; the wording of the will shows that it was evidently in his mind that the personal estate would pay all his debts and funeral expenses.

" Without going into the question as to whether the presumption of payment has arisen against this bond by reason of its being over twenty years old, and treating it as a just debt of the testator, we will examine the question whether it should be paid out of this fund.

" Then, as said by Mr. Justice PAXSON in the opinion delivered in Mason's Appeal, 89 Pa. 404, this is not a question of equities, or the marshaling of assets; nor a question of election by creditors between funds; but it is a matter of the payment of debts in the manner prescribed by law. Until the personal estate, the primary fund for the payment of debts, is exhausted or shown to be insufficient, the law will not permit the administrator or executor, unless so directed by the will, to sell the real estate for the payment of debts, and then only so much thereof as may be necessary to make up the deficiency of the personal estate.

" In this case before us, the personal estate was exhausted and shown to be insufficient by the executors' account filed, which shows a balance due the executors of $1,074.81. Such being the case, and it being a fact that the testator left several tracts of land of a value more than sufficient to pay all the balance of debts left unpaid after the exhausting of the personal estate, let us see from what source the law would require these debts to be paid.

" In Hoover v. Hoover, 5 Pa. 356, in an opinion by Justice BELL, we find the law laid down that the established order of the application of the several funds liable to the payment of debts is: (1) The general personal estate not expressly or by implication exempted. (2) Lands expressly devised to pay debts. (3) Estates descended to the heirs. (4) Devised lands charged with the payment of debts generally, whether devised in terms general or specific (every devise of land being in its nature specific). (5) General pecuniary legacies, pro rata. (6) Specific legacies, pro rata. (7) Real estate devised, whether in terms general or specific. See also Estate of Jonathan Jones, Deceased, 7 Phila. 495.

" As what has been said in regard to the fund from which debts are to be paid applies also to the claim of Henry C. Howard, executor of Eliza F. Pyott, we will now take up the consideration of that claim also, as facts given under it apply also to both claims, and they may therefore be considered together.

" Garrett E. Smedley, Esq., as counsel for Henry C. Howard, executor of the last will and testament of Eliza F. Pyott, deceased, presents a claim against the fund for $1,074.81, being the balance shown by the account of Eliza F. Pyott and Henry C. Howard, executors of the last will and testament of Reese Pyott, deceased, as due said Eliza Pyott, one of the executors, for moneys advanced by her to pay debts of Reese Pyott's estate. By the testimony of Henry C. Howard, who was called as a witness, it was shown that the estate of Reese Pyott was indebted to the guardian of the minor children of Dr. Moore, deceased, in the sum of $1,368.65, which is also shown by the executors' account in the estate of the said Reese Pyott. He, the said Reese Pyott, having been the former guardian of said children, and upon the settlement of his account as guardian by his executors that balance appeared as due from him to said

minors. A part of the balance, to wit, the sum of $1,074.81, was paid by said Eliza F. Pyott as one of the executors of said Reese Pyott, out of her own fund ; the personal estate having been exhausted, and leaving that much of the debts to be made up in some way. She then claimed a credit for it in her executor's account. The amount was not paid or taken from the funds at the time Mr. Howard filed his accounts as trustee, and there is no personal estate of Reese Pyott to pay the said balance claimed by said Eliza F. Pyott.

"Mr. Smedley further offers in evidence a bond executed by Eliza F. Pyott and Henry C. Howard, executors of the last will and testament of Reese Pyott, to Eliza F. Pyott for $1,074.81, and bearing date the 2d day of March, 1881. Mr. Howard, on cross-examination, shows that no action was ever taken on the bond and no suit ever commenced for the collection of the claim, and no proceedings ever had on the bond for its collection. That no application was ever made to the orphans' court by the trustee for leave to pay to the executors or the widow the amount due upon this bond. That the said Eliza F. Pyott never made a formal demand of her coexecutor for the payment of the bond, but that she was informed by Mr. Howard that she would have a claim against the real estate of Reese Pyott when it came to be distributed, and that is why the bond was drawn up and executed, as an evidence of the debt. This was done when their account as executors was settled. The real estate of Reese Pyott had not been sold at the time when his executors filed their account.

"Mr. Howard further shows that at the time of Reese Pyott's death he was possessed of the following real estate : A farm on which he lived in the township of Marple, containing about sixty acres, which was subsequently sold to Alexander Johnson. Also another piece of property in the same township of about ten acres which was afterwards sold to Jacob Green. Also, a property called the Drove property, situate on the West Chester road, at the corner of the road crossing the West Chester road from the Springfield road, containing about forty-three acres, which was sold to Mrs. Emily Long for about $6,500.

"The funds for distribution before the auditor are the proceeds of sale of the sixty acres in Marple township.

" The deed for the Drove property was made March 20, 1878, the ten acres sold to Jacob Green were sold for $1,742.42, on March 28, 1883, and the sixty acres were sold under order of court as before stated.

" Eliza F. Pyott sold these properties and made the deeds for them as owner thereof, and the purchase money was received by her, except that which was required to pay incumbrances. She claimed title to the land under the will of Reese Pyott, and as his devisee, the claim being made under the third item in the will. The executors of Reese Pyott filed their account on March 22, 1881.

" When Mrs. Pyott sold the piece of ground in 1878, for $6,500, there was $500 paid to her in cash of the purchase money, and she took a mortgage for $3,400, the property being taken subject to a prior mortgage of $2,600. This $3,400 has since been paid. The only reason given why Mrs. Pyott did not re-imburse the executors from the proceeds of the sale of the real estate is that she thought she had already paid more than her portion of the debt, by the payment of the mortgage on the land she took, and that the balance should stand as a claim against the real estate in which she had a life estate.

" Mrs. Long afterwards sold the Drove property for $7,000. When Mrs. Long bought the property she gave as a cash con-sideration a lot worth $500, and the balance of the purchase money was secured on the property.

" It will thus be seen that from the sales of real estate one of the executors, Eliza F. Pyott, had in her hands the proceeds, amounting to $5,642, a fund more than sufficient to pay all the balance of debts, and a fund arising from the residue of real estate of testator. . . .

" The sixty acres from which this fund arises was not sold for the payment of debts, but was sold by order of court un-der direction of the will, on the petition of the widow, Eliza F. Pyott, the proceeds to be invested for her benefit for life, and at her death the principal to be divided in accordance with the directions in the will among the heirs at law of the testa-tor living at that time, and their heirs and assigns.

" The devise of these sixty acres was a specific devise. In this instance, the first-class assets having been exhausted with-out fully satisfying the debts, and the testator not expressly de

vising any lands for their payment nor charging any of his land for the payment of debts generally, and in Pennsylvania all the lands of decedent, whether descending or devised by law, being charged with the payment of the debts of the decedent, the devisee taking the residue of real estate certainly takes it subject to the payment of the debts which were not paid and satisfied by the personal estate, and the residue of real estate must certainly be taken to pay the debts before the land specifically devised. As has been shown, the. residue of real estate is amply sufficient to pay these debts, and sufficient funds were obtained from the sale of this residue of real estate by the said Eliza F. Pyott, the devisee thereof, as well as one of the executors, to pay them ; and this. she should have been required to do. In the opinion of the auditor, the claimant, J. Jones Leedom, could not sit quietly by and allow the funds of the residue of real estate to be used for other purposes than the payment of his debt, and then be permitted to come in on the funds arising from the real estate specifically devised.

" This also applies with stronger force to the claim of H. C. Howard, executor of Eliza F. Pyott, for the $1,074.81, expended by her as the executor of Reese Pyott in the payment of his debts, as shown by the executor's account. She took the residue of the real estate which should have been applied to the payment of his debts and appropriated it to her own use ; selling it as the owner thereof under the devise in the will to her, receiving the funds from such sales and paying herself back therefrom, fully, for the moneys that she had expended as executor in the payment of Reese Pyott's debts ; therefore she can have no further claim upon his estate.

" These claims are therefore not allowed by the auditor.

" Under the finding of the auditor this fund would be distributed to the parties named in the second item in the will, the heirs at law of the testator living at the time of death of the said Eliza F. Pyott, as hereinbefore named, their heirs and assigns, in the proportions designated in said will, excepting the share of any of said heirs which may be assigned or attached, and these shares are to be distributed to those legally entitled thereto ; but all the shares are subject to collateral inheritance tax.

" The auditor is of opinion that sale of the sixty acres, under

order of court, and the direction in the will, converted the proceeds of sale into personality, and that the fund is to be distributed as personalty.

" In this case the widow invoked the process of the court to enforce the execution of the positive direction in the will to sell by a trustee to be appointed by the court, and the proceeds · of sale pass under the will as money. See Roland v. Miller, 100 Pa. 51.

" On Jan. 21, 1881, James Pyott and wife executed a deed of assignment to Jesse C. Dickey and R. H. Hodgson for the benefit of the creditors of the said James Pyott, which deed was duly recorded in Chester county on January 21, 1881, the trust having been accepted by the said assignees on the same date. This deed of assignment conveyed all the real estate, and all the goods, chattels, rights, credits and property of every kind, whether real, personal or mixed, of the said assignors. This deed of assignment was afterwards recorded in Delaware county on Dec. 9, 1881.

" The claim of Henry C. Howard, executor of Eliza F. Pyott, deceased, against the share of James Pyott, on attachment execution of Eliza Pyott against James Pyott, defendant, and Henry C. Howard, trustee to make sale of the real estate of Reese Pyott, deceased, issued Oct. 29, 1884, from the Common Pleas of Delaware county, on judgment in the said court against said James Pyott, entered Oct. 29, 1884, is not allowed, as the deed of assignment antedated the judgment, and the attachment was issued before the death of Eliza F. Pyott, the widow."

The auditor accordingly distributed the fund to the heirs to the exclusion of these claims.

Exceptions were filed by J. Jones Leedom and by H. C. Howard, executor of Eliza F. Pyott, alleging error in not allowing their claims.

The auditor disposed of the exceptions as follows:

" The auditor sees no reason for changing his report, excepting in the following respect: In his first report the fund was treated as personalty by a conversion, but the question as to how and when the conversion was had was not passed upon, and as this may become an important question in this distribution it is proper that the auditor should give his opinion on this subject. It will be seen that under the wording of the

will the testator only intended a sale should be made of the real estate in the event of his wife deeming it to be to her advantage that the same or any part thereof shall be sold, and that then the sale is to be made by a trustee to be appointed by the orphans' court upon her petition. Thus it will be seen that there was not an absolute direction to sell, and that the sale could only take place in the event of the wife consenting to it and presenting a petition to the court for the appointment of a trustee. In the opinion of the auditor there was therefore no conversion of the land into money by the will, even in equity, and no such conversion could be considered as having taken place until such consent on the part of the wife had been given, by her petition to the orphans' court for the appointment of a trustee to make sale, and the sale made under the order of the orphans' court really worked the conversion. In Henry v. McCloskey, 9 Watts, page 145, it is decided that if the direction by the testator in his will to sell his real estate be not absolute but qualified, such as where there is a direction in the will to sell the real estate upon the widow agreeing to it in her lifetime, and if it shall appear from the words of the will that the testator only intended that the sale should be made in event of his wife consenting to it and not otherwise, a conversion of it into money would not even in equity be considered as having taken place, until such consent on her part had been given.

" In Peterson's Appeal, 88 Pa. page 397, it is held where a discretionary power of sale is given by will to trustees, no conversion of realty into personalty will take place until a sale is actually made. To work a conversion the direction to sell must be positive, irrespective of contingencies and independent of discretion. See also the Estate of Samuel Machemer, deceased, 140 Pa. page 544. See also, Mellon v. Reed, 123 Pa. 14 ; Stoner v. Zimmerman, 21 Pa. 394."

Exceptions were dismissed by the court, CLAYTON, P. J.

*Errors assigned* were dismissal of exceptions, quoting them.

*Garrett E. Smedley,* for Henry C. Howard, appellant, cited : Williamson's Ap., 94 Pa. 231 ; Philadelphia's Ap., 112 Pa. 470 ;

Kirk's Est., 8 W. N. 107; Loomis's Ap., 10 Pa. 387; Armstrong's Ap., 63 Pa. 312; Snyder's Ap., 75 Pa. 191.

*E. H. Hall*, for J. Jones Leedom, appellant, cited: Peterson's Ap., 88 Pa. 397; Machemer's Est., 140 Pa. 544; Jones's Ap., 99 Pa. 124; Philadelphia's Ap., 112 Pa. 470; Hoover v. Hoover, 5 Pa. 351; Snyder's Ap., 75 Pa. 191; Loomis's Ap., 10 Pa. 387; Armstrong's Ap., 63 Pa. 312.

*W. Roger Fronefield* and *Samuel J. Taylor*, for appellees, cited: Risk's Ap., 110 Pa. 171; McGlaughlin v. McGlaughlin, 24 Pa. 20; McCracken's Est., 29 Pa. 426; Bennett's Est., 148 Pa. 139; Armstrong's Ap., 63 Pa. 312; Grim's Ap., 89 Pa. 333; Cake's Est., 157 Pa. 457; Demmy's Ap., 43 Pa. 155; Act of Feb. 24, 1834, P. L. 77; Hughes v. Hughes, 54 Pa. 240; Briggs's Ap., 93 Pa. 485; Baily's Est., 156 Pa. 634.

## HOWARD'S APPEAL.

PER CURIAM, March 26, 1894:

The facts of this case, as well as the questions of law arising thereon, are clearly and satisfactorily presented in the report of the learned auditor, and need not be restated. His schedule of distribution, to which alone the exceptions were directed, was adopted by the orphans' court and forms the basis of the decree from which this appeal was taken. We have fully considered the questions involved in the several specifications of error, and find nothing in either of them that requires reversal or modification of the decree.

Decree affirmed and appeal dismissed with costs to be paid by appellant.

## LEEDOM'S APPEAL.

PER CURIAM, March 26, 1894:

This case was argued with Howard's Appeal from same decree, No. 222 of this term.

We have fully considered the questions presented by the specifications, and are not convinced that there was any error in adopting the schedule of distribution recommended by the learned auditor. For reasons given in his report, we think the decree founded thereon should be affirmed.

Decree affirmed and appeal dismissed with costs to be paid by appellant.